UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS RAMIREZ, | CASE NO. 1:99-CV-6282-OWW-DLB-P |
|     Plaintiff, | |
|     v. | FINDINGS AND RECOMMENDATION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| G. GALAZA, et al., | |
|     Defendants. | (Doc. 96) |

_____/

A.   Procedural History

Plaintiff Luis Ramirez ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's amended complaint filed May 12, 2004, against Defendant R. McEnroe ("Defendant"). Plaintiff alleges that his due process rights were violated when he was convicted of a prison-rules violation for assaulting his cell mate and placed in the Security Housing Units as a result. This Court initially dismissed the complaint for failure to state a claim upon which relief could be granted because Plaintiff had not previously invalidated the conviction through habeas corpus. On appeal, the Ninth Circuit reversed the judgment and remanded the action to the District Court. Ramirez v. Galaza, No.

1

00-15994.[1]

After remand, Plaintiff filed an amended complaint and Defendants McEnroe, Melching, Batchelor, Galaza and Chacon moved for dismissal based on Plaintiff's failure to exhaust administrative remedies. The Court granted the motion as to all Defendants except McEnroe.

On January 17, 2006, Defendant McEnroe filed a motion for summary judgment. After receiving an extension from the Court, Plaintiff filed an opposition on June 9, 2006.[2]

B.   Legal Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

---

[1] The Court of Appeals held that the District Court erred by applying the "favorable termination rule," resulting in dismissal of the action. The Court of Appeals held that "the favorable termination rule does not apply to § 1983 suits challenging a disciplinary hearing or administrative sanction that does not affect the overall length of the prisoner's confinement." Ramirez v. Galaza, 334 F.3d 850, 858 (9th Cir. 2003). The Court of Appeals ruled that because plaintiff's allegations concerning the disciplinary proceedings would not necessarily imply the invalidity of his continued incarceration, the action may proceed as a § 1983 without first invalidating the result of the disciplinary hearing. Id. at 859. The Court of Appeals also ruled that the District Court failed to consider whether plaintiff's term in administrative segregation imposed an "atypical and significant hardship" under the analysis of Sandin v. Connor, 515 U.S. 472, 484 (1995). The Court of Appeals noted the following allegations as relevant to the determination: that plaintiff's segregated unit was overcrowded and violent, that the isolation severed ties with plaintiff's family, that plaintiff "was made a patient of [ ] psychiatric programs," and that plaintiff was segregated for a period of two years. Ramirez v. Galaza, 334 F.3d at 861.

[2] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the court in an order filed on August 11, 2004. Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). (Doc. 12.)

2

Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655

(1962) (per curiam).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

C.  Undisputed Facts

***Ramirez's Disciplinary Charge for Battery Causing Serious Bodily Injury***

1. On July 27, 1997, two officers at California State Prison, Corcoran were going through Mr. Ramirez' housing unit picking up mail from inmates. Declaration of T. Patterson in Support of Defendant's Motion for Summary Judgment ("Patterson Dec."), Ex. B at B1-B2.

2. When they approached Mr. Ramirez's cell, they found his cellmate, Billie Sanchez, standing at the door covered in blood and saying, "Get me out of here." *Id*.

3. The Officers activated an alarm, and once the facility sergeant arrived, the inmates were removed from their cell. Plaintiff had no visible injuries and refused any medical treatment. Mr. Sanchez was transported by an emergency vehicle to the prison's Acute Care Hospital for treatment of his injuries. *Id.*

4. Although Mr. Sanchez was awake when he was examined, he was disoriented concerning place and time. He told medical staff, "I don't know what happened." The examining doctor found that Mr. Sanchez had a concussion; 40-50 lacerations on his legs, stomach and face; 10-15 puncture wounds on the back of his neck; and hemorrhage and bruising between his rectal and scrotum area. Two of the puncture wounds on the back of Mr. Sanchez's neck required sutures. The remaining lacerations were cleansed with Betadine and bandaged. *Id.* at B25, B2.

5. Although Mr. Ramirez's cell was searched for weapons and contraband, none were found. Given the injuries and circumstances, Mr. Ramirez was issued a Rules Violation Report,

which charged him with battery on an inmate with a weapon resulting in serious bodily injury. *Id.* at Ex. C.

### *The Hearing and Procedural Protections Given to Ramirez*

6. A hearing on the charges against Ramirez was scheduled about two months after the incident, on September 23, 1997. Eleven days before the hearing, Ramirez was given a copy of the incident report and the Rules Violation Report, which described the charges. *Id*. at Ex. C, C1.

7. Also before the hearing, Mr. Ramirez was assigned the assistance of an Investigative Employee. Mr. Ramirez gave the Investigative Employee a list of several questions to ask Mr. Sanchez and the Investigative Employee conveyed the questions and reported the answers as follows:

    Q1:   Do you or do you not take sleeping medications?
    A1:   Yes.
    Q2:   Prior to the date of the incident, were you or were you not without sleep for several days?
    A2:   Yes.
    Q3:   Did I in any way hurt you on 7-27-97?
    A3:   No.
    Q4:   Do you feel threatened by me?
    A4:   No.
    Q5:   Have you been threatened or coerced to answer these questions?
    A5:   No.

*Id.* at C3.

8. Defendant McEnroe, who was the facility lieutenant, served as the Senior Hearing Officer at the hearing. Mr. Ramirez was allowed to testify and he denied doing anything to Mr. Sanchez. The only witness he asked for was Mr. Sanchez but because Lt. McEnroe was concerned with the security implications of placing the alleged victim and attacker in the same room together, he decided to have Mr. Sanchez be available for testimony by phone. Over the phone, Mr. Sanchez stated the same as he did to the Investigative Employee, but he also stated he did not remember much about the night of the incident. *Id.* at C1-C2.

9. Based on the evidence, which showed that Mr. Sanchez was severely injured while locked in the cell with Mr. Ramirez, Lt. McEnroe found Mr. Ramirez guilty of the assault charge. Mr. Ramirez did not lose any sentence credits as a result of the conviction because the

hearing was not held within the strict time limits required for a credit loss. He did receive ten days of disciplinary detention, sixty days of lost privileges and a referral for assignment to the Security Housing Unit. A report summarizing the hearing and findings was drafted and Mr. Ramirez received a copy. *Id.*

10. Following the hearing the classification committee assigned Mr. Ramirez a twenty-four month term in the Security Housing Unit because of aggravating factors and because he previously had been convicted of similar misconduct. *Id.* at Ex. D.

***Ramirez's Confinement and Assignment to the Security Housing Unit***

11. Mr. Ramirez has been incarcerated by the California Department of Corrections and Rehabilitation since August 4, 1995. *Id*. at Ex. E.

12. He is serving three life terms plus twenty-eight years. In October 1996, Mr. Ramirez was placed in administrative segregation pending assault charges for battering another inmate. He was convicted of the charges and given a fifteen-month term in the Security Housing Unit at California State prison, Corcoran. Thus, Mr. Ramirez was already serving a term in the Security housing Unit when the assault at issue in this case occurred. *Id*.

13. In California, an inmate may be placed in administrative segregation when his presence in the general population presents an immediate threat of safety to the inmate or others, endangers institutional security, or jeopardizes the integrity of an investigation into serious inmate misconduct or criminal activity. Cal.Code Regs. Tit. 15, § 3335(a).

14. According to the regulations, for all segregated inmates, including those confined to the Security Housing Unit for prison rules violations, confinement conditions must "approximate those of the general population." *Id.* The regulations require that segregated inmates wear the same clothes; eat the same meals except that a sandwich meal may be served for lunch; have only nominal mail restrictions; retain visiting privileges[3]; are provided the same

---

[3]Inmates in special housing programing units - including those in the Protective Housing Unit, Psychiatric Management Unit and Security Housing Unit - are not allowed contact during visits. Cal.Code Regs. Tit. 15, § 33341.5, 3343(f).

cleaning supplies and laundry schedule; are allowed to exercise;[4] are given the same access to reading materials; are allowed telephone calls; may be provided with educational, commissary, library, social, counseling, religious and recreational programs that can reasonably be provided; and receive daily visits and inspections from custodial and medical staff.  *Id.* § 3343 (b)-(l).

D.  Due Process Claim

Plaintiff alleges that his due process rights were violated based on the adjudication of disciplinary charges and his confinement in segregated housing.  Plaintiff alleges various procedural deficiencies and a lack of evidence supporting his confinement in the SHU.

The Due Process Clause protects against the deprivation of liberty without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  Liberty interests may arise from the Due Process Clause itself or from state law.  Wilkinson v. Austin, 125 S.Ct. 2384, 2393 (2005).  The Due Process Clause itself does not confer on Plaintiff a liberty interest in avoiding "more adverse conditions of confinement."  Wilkinson, 125 S.Ct. at 2393; Hewitt, 459 U.S. at 466-68.  Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation.  Sandin v. Conner, 515 U.S. 472, 481-84 (1995).  Such interests are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Id. at 484.

Defendant argues Plaintiff's due process rights were not implicated by his punishment because his confinement in the SHU did not subject him to an atypical and significant hardship in comparison to other forms of non disciplinary prison life.  Defendants argue that Plaintiff was already serving a term in the SHU when the assault at issue occurred (UDF 12) and further, for all segregated inmates, confinement conditions must "approximate those of the general population."

---

[4] Inmates in special housing programing units - including those in the Protective Housing Unit, Psychiatric Management Unit and Security Housing Unit - generally receive a minimum of exercise outside their cells for ne hour per day, five days a week.  Cal.Code Regs. Tit. 15, § 3341.5, 3343(h).  They may also receive yard time.  *Id.*

7

Plaintiff disputes this and states in his declaration that despite the regulations, the actual conditions in the SHU to which he was subjected, were atypical and significant in that inmates in the SHU are not reviewed by the classification committee as often as inmates in administrative segregation or general population, which affects the inmates' classification score and the programs to which he is entitled. Ramirez Dec. in Opposition to Motion for Summary Judgment, p.2. He also states that inmates in the SHU are limited to activities within the confines of the SHU, whereas other inmates have access to programs outside of their cells and housing units. *Id.* at p. 3. Plaintiff states that even when taken out of their cells, inmates in the SHU are always handcuffed, unlike general population and further, inmates in the SHU are required to wear gold jump suits while general population inmates are issued jeans, chambray shirts and jackets. *Id.* Plaintiff contends general population inmates are given more undershorts, socks and T-shirts and are allowed to wear tennis shoes while SHU inmates are required to wear uncomfortable "soft sole" shoes. *Id*. at p. 6. Plaintiff states that unlike general population, inmates in the SHU do not have the means to handwash their clothes and are forced to rely on the officers who collect the laundry and leave the inmates' "clean" clothes on the dirty floors in the SHU. *Id*. at p. 6-7. Plaintiff also states that inmates in the SHU are given smaller portions of food compared to inmates in general population and since there is no kitchen in the SHU, the food is usually not fully cooked. *Id.* Plaintiff also identifies differences in mailing supplies, visitation, cleaning and personal supplies, bedding and telephone privileges between the conditions general population and in the SHU.

The Court finds that there exist disputed issues of fact with respect to whether or not Plaintiff's confinement in the SHU subjected him to an atypical and significant hardship in comparison to other forms of non disciplinary prison life thereby implicating the due process clause.

Defendant argues that even if Plaintiff had a protected liberty interest in avoiding confinement in the SHU, he was given the process he was due in connection with his disciplinary hearing. Wilkinson, 125 S.Ct. at 2394-95. Assuming there was a protected liberty interest at stake, the issue then is whether Plaintiff received the process he was due.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539,

8

556 (1974). With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994). "Some evidence" must support the decision of the hearing officer. Superintendent v. Hill, 472 U.S. 445, 455 (1985). The standard is not particularly stringent and the relevant inquiry is whether "there is *any* evidence in the record that could support the conclusion reached . . . ." Id. at 455-56 (emphasis added).

Plaintiff challenges both the procedural protections provided and the evidence used against him.

### 1.   Pre-Deprivation Procedures

Turning first to the procedural protections, Plaintiff was given a copy of the Rules Violation Report and the incident report, eleven days before the scheduled hearing. UDF No. 6. A report summarizing the hearing and findings was drafted and plaintiff was given a copy. UDF No. 6. While Sanchez was not personally present as a witness, he was available by phone and answered a list of questions provided by Plaintiff. UDF Nos. 7,8. Furthermore, Plaintiff was provided the assistance of an Investigative Employee to assist in collecting and presenting the evidence necessary for an adequate understanding of the case. UDF No.7. Based on these procedures, Defendant argues that Plaintiff received all the process he was due and his constitutional rights were not violated.

Plaintiff argues that he requested additional witnesses at the hearing, namely the medical personnel that attended to Mr. Sanchez after the incident. Plaintiff alleges this witness was denied as Defendant informed him he would base his decision on the medical reports. Plaintiff also argues he should have been able to question Mr. Sanchez at the hearing because he was not the "victim."

Plaintiff states that he was not allowed to question Mr. Sanchez on the telephone but instead, Mr. Sanchez was called prior to the hearing.

The facts presented by Defendant and undisputed by Plaintiff establish that Plaintiff was provided all the process he was due. Eleven days before the hearing, Plaintiff was given a copy of the incident report and the Rules Violation Report describing the charges. While Sanchez was not physically present at the hearing due to safety concerns, he was questioned prior to the hearing and Plaintiff had the opportunity to prepare questions for him to answer. Indeed, the answers provided by Sanchez were favorable to Plaintiff. While Plaintiff argues that he also requested the opportunity to question the MTA, assuming he made this request, Plaintiff states the Sergeant determined that the testimony was not needed because he was relying on the medical records. Prison officials retain the discretion to deny the calling of witnesses who are irrelevant. *See*, Wolff, 418 U.S. at 566; Bostic v. Carlson, 884 F. 3d 1267, 1274 (9th Cir. 1989). While Plaintiff makes the conclusory allegation that the denial of witnesses violated his due process rights, he does not proffer what the substance of their testimony would have been or how it could have helped him, given the MTA's report describing the injuries. Thus, Plaintiff has failed to present any facts which would raise a triable issue that he was denied the testimony of a witness who would offer relevant evidence in his favor. *See*, Wolff, 418 U.S. at 566.

      2.      Evidence in Support of Disciplinary Conviction

Turning to the "some evidence" standard, the Court is not to "examine the entire record, independently assess witness credibility, or re weigh the evidence; rather 'the relevant question is whether there is any evidence in the record that could support the conclusion.'" Bruce at 1287 (quoting Superintendent, 472 U.S. at 455-56). However, although discussed in the context of a disciplinary hearing, the Ninth Circuit has stated that under the Hill standard, the evidence should have some indicia of reliability. Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987).

As described in the Reporting Employees Written Report, Plaintiff's cell mate, Mr. Sanchez was found by correctional officers locked in a cell with Plaintiff, covered in blood and suffering from severe injuries. Defendant argues the report constitutes "some evidence" from which the hearing officer properly found Plaintiff guilty of the disciplinary violation.

The Court agrees that the Reporting Employee's Written Report and the CDC 7219 Medical Report which describe the circumstances and injuries sustained by Sanchez are sufficient to meet the "some evidence" standard entitling Defendant to summary judgment. While Plaintiff disputes the ultimate finding of guilty in that he argues Sanchez injured himself, Plaintiff fails to provide evidence establishing a factual dispute as to whether the disciplinary violation was supported by "some evidence." This Court cannot reweigh the evidence. The Court can only determine whether a disputed fact exists as to whether there was evidence in the record that could support the conclusion reached. Here, there clearly is.

Defendant's final argument is that he is entitled to qualified immunity. Because the Court recommends granting Defendant's motion based on the foregoing analysis, the Court does not reach this argument.

E.   Conclusion

Accordingly, assuming plaintiff had a liberty interest in remaining free from confinement in the SHU, the undisputed facts establish that plaintiff was given all process due and his conviction was supported by some evidence in the record. Based on the foregoing, it is HEREBY RECOMMENDED that Defendant's motion for summary judgment, filed January 17, 2006 be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within twenty (20) days after being served with these Findings and Recommendations, plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   August 9, 2006                    /s/ Dennis L. Beck
3b142a                                UNITED STATES MAGISTRATE JUDGE